*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. R. DOWNEY, Minor.

UNPUBLISHED
November 21, 2023

No. 365378
Wayne Circuit Court
Family Division
LC No. 2019-000458-NA

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his minor child, AD, on the basis that the trial court clearly erred when it concluded that termination was in AD's best interests. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On March 12, 2019, petitioner, the Department of Health and Human Services (the "Department"), filed a petition seeking termination of respondent's parental rights to AD, alleging that respondent was involved in domestic violence against AD's mother,[1] forfeited his parental rights to two other children, neglected and improperly supervised AD, engaged in substance abuse, was noncompliant with his prior treatment plans, and had untreated mental health issues. The trial court authorized the petition, removed AD from respondent custody and care, and took jurisdiction of AD on the basis of the allegations in the petition. Respondent was ordered to engage in parenting classes, obtain a substance abuse assessment and follow any recommendations, maintain suitable housing, income, and contact with the Department, attend all court hearings, participate in individual therapy, undergo a psychological evaluation and follow any recommendations, and regularly visit AD.

Seven months after AD was removed, respondent was incarcerated for drug trafficking and domestic assault. Respondent failed to complete any part of his case service plan prior to or during his incarceration, despite the trial court's many orders providing respondent opportunities to show

---

[1] AD's mother is also a respondent in this case; however, she is not a party to this appeal.

progress toward reunification. At the termination hearing, the trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19(b)(3)(a)(*ii*) (desertion of child for 91 or more days and custody not sought), (c)(*i*) (conditions leading to adjudication continue to exist), (h) (parental imprisonment denied child a normal home for two years while failing to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent's home), and (k)(*i*) (abandonment of a young child and reasonable likelihood of future harm if returned to parent). At the best-interest hearing, the trial court terminated respondent's parental rights after finding AD did not have a bond with respondent, respondent failed to complete his case service plan, and AD's maternal great-grandmother wanted to adopt AD. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a "trial court's determination regarding the children's best interests" for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists when the reviewing court has a definite and firm conviction that a mistake was made. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020).

## III. ANALYSIS

On appeal, respondent argues that the trial court's order terminating his parental rights was not in AD's best interests because AD had a bond with him and respondent was attempting to reform his behavior. We disagree and affirm the trial court's order.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted). The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019).

A child's bond with the parent is an important factor the trial court must consider when making a best-interest determination. See *White*, 303 Mich App at 713. Respondent testified he had a small bond with AD. However, Migdala Quinones, a Department caseworker, testified there was no bond between AD and respondent. For example, on certain occasions, AD would refuse to talk to respondent when he called. In addition, respondent was incarcerated for most of AD's life, and he had not seen her in person since she was an infant. If there was any bond between respondent and AD, it is small. Additionally, any connection between AD and respondent will predictably diminish even more during the remainder of respondent's incarceration, which has been extended to at least 2024. In contrast, AD lived with her grandmother her entire life and considered her grandmother as her "mother." Thus, the trial court did not clearly err when it found

that AD's bond with her grandmother and lack of a bond with respondent weighed in support of the trial court's decision to terminate respondent's parental rights.

A parent's parenting ability is another factor the trial court should consider when making a best-interest determination. *Id*. Respondent released his parental rights to his two other children before AD was removed. This demonstrated respondent's inability or disinterest in caring for his other children as well as his unwillingness to work toward family reunification. Additionally, respondent had a pattern of not following mental health treatment plans or taking his medication. Respondent was diagnosed with anxiety, intermittent explosive disorder, bipolar disease, depression, attention deficit hyperactivity disorder, and posttraumatic stress disorder, and was hospitalized for stress and self-harm in December 2018. Accordingly, the trial court's finding that respondent's failure to reunify with his other children as well as his failure to address his mental-health issues negatively impacted his ability to parent was not clearly erroneous.

Respondent's drug use also supported the trial court's determination that termination was in AD's best interests. Indeed, respondent's drug abuse constituted one of the two main reasons AD was removed from respondent. Respondent had substance abuse issues in the past involving cocaine, lysergic acid diethylamide ("LSD"), methamphetamine, heroin, and Xanax, and was incarcerated for most of AD's life for drug trafficking and aggravated assault. Though respondent was not using drugs while in prison, his history of substance abuse supported the trial court's best-interest finding. See *Rippy*, 330 Mich App at 361 (holding a parent's substance abuse history is relevant in a best-interest inquiry).

A parent's history of domestic violence is also a relevant factor in a trial court's best-interest analysis. See *White*, 303 Mich App at 714. The petitions involving all of respondent's children contained elements of domestic violence. Respondent was incarcerated for a year after an incident where he committed domestic violence against AD's mother, while one of his other children was in the home. Indeed, in this case, the trial court ordered respondent to leave the grandmother's home because of respondent's history of domestic violence. Respondent claimed he was in domestic-violence therapy when the trial court took jurisdiction of AD, but subsequent evidence indicated respondent continued to engage in domestic violence against AD's mother. Respondent also incurred "misconducts" in prison for fighting with other inmates, further evidencing the persistence of respondent's violent tendencies.

A parent's compliance with the treatment plan is another relevant factor in determining the best interests of a child. *Id*. Respondent failed to complete any part of his case service plan prior to or during his incarceration. Respondent admitted he did not have an excuse for failing to participate in services prior to his incarceration. Respondent also failed to attend many of the hearings he was ordered to attend.

Respondent's ability to participate in services during the beginning of his incarceration was inhibited by the COVID-19 pandemic, but the trial court specifically extended respondent's opportunities to engage in services in light of the delays caused by the pandemic. Respondent claimed the prison did not provide him with services during the post-COVID-19 portion of his incarceration, but the record shows that the reason was because respondent incurred so many "misconducts" that he was placed in Level 4 confinement—where the services were not offered. Respondent's failure to complete the services in his treatment plan primarily resulted from his

-3-

criminal activity and misconduct while in prison. Therefore, the trial court did not clearly err when it concluded that respondent's failure to comply with his treatment plan supported termination.

A parent's visitation history is also relevant to a trial court's best-interest determination. See *id*. Prior to respondent's incarceration, he did not regularly visit AD. After his incarceration, respondent was inconsistent with his calls to AD, and only participated in 27 of the 115 phone calls he was offered to have with AD. Respondent claimed he had no money to pay for calls to AD, however, even when respondent had free phone calls during the COVID-19 pandemic, he did not use those opportunities to call AD. Respondent sometimes wrote AD, but at least one of his letters could not be shared with her because he did not write the letter in an age-appropriate manner. Overall, respondent's sporadic visitation history supported the trial court's best-interest finding.

That fact that, throughout the entire case, AD did well in her placement with her grandmother, also supported the trial court's decision to terminate respondent's parental rights. See *id*. at 713 (holding a child's "well-being while in care" is an important factor to consider in a best-interest analysis). As legally required, the trial court expressly considered AD's placement with her relative prior to concluding termination was in AD's best interests. See *In re Olive/Metts Minors*, 297 Mich App 35, 44; 823 NW2d 144 (2012) (holding a court's failure to address the child's placement with a relative is clear error requiring the best-interest finding to be vacated). AD's need for permanence, stability, and finality also supported the trial court's decision to terminate. See *id*. (holding a child's need for permanence, stability, and finality should be considered in a best-interest analysis). Prior to respondent's incarceration, he was homeless, demonstrating respondent's inability to find stable, appropriate housing, which would be an even greater concern after his release from prison. Lack of stable housing would further delay AD's path to permanence, stability, and finality. In contrast, AD's grandmother wants to adopt AD, which would provide AD with immediate permanence, stability, and finality. See *id*. at 714 (holding the possibility of adoption weighs in support of terminating a parent's parental rights).

In sum, the trial court did not clearly err when it concluded by a preponderance of the evidence that termination of respondent's parental rights was in AD's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

-4-